**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3940-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

R.B.,

    Defendant-Appellant.

_____

> Argued September 12, 2024 – Decided September 23, 2024
>
> Before Judges Natali and Vinci.
>
> On appeal from the Superior Court of New Jersey, Law Division, Morris County, Municipal Appeal No. 22-0028.
>
> George T. Daggett argued the cause for appellant.
>
> Tiffany M. Russo, Assistant Prosecutor, argued the cause for respondent (Robert J. Carroll, Morris County Prosecutor, attorney; Robert J. Lombardo, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant R.B.[1] appeals from her convictions for simple assault, N.J.S.A. 2C:12-1(a)(1), following a trial de novo in the Law Division. She also challenges the court's order denying her motion for reconsideration. We affirm because the findings supporting the conviction are based on substantial, credible evidence in the record, and the court's decision to deny reconsideration was not an abuse of discretion.

## I.

The relevant facts leading to R.B.'s convictions were established at the municipal court trial and stem from two domestic violence incidents occurring on December 28, 2018, and April 21, 2019, between R.B., and her then-husband J.B. J.B. and two Mt. Arlington police officers testified on behalf of the State. R.B. elected not to testify. The State also moved into evidence audio and video recordings as well as photographs taken by the police.

According to J.B., during the evening of December 28, while the parties' minor son was entertaining his two friends at the family home in Landing, R.B. began to verbally harass him. In an attempt to diffuse the situation and avoid a

---

[1] We use initials to refer to defendant to preserve the privacy of the victim of domestic violence. R. 1:38-3(c)(12).

confrontation in front of their son and his friends, J.B. briefly left the parties' home. When he returned, he found R.B. intoxicated. After she continued to verbally harangue him, J.B. used his cell phone to record their interaction.

As reflected in the audio recording admitted at trial, at one point J.B. stated to R.B., "touch me again . . . [and] go to jail tonight", and later told R.B., "lay another hand on me, lay another f[******] hand on me." R.B. responded by taunting J.B. to call the police. Instead, J.B. attempted to again diffuse the situation by going upstairs. Unrelenting, R.B. followed J.B. and proceeded to break a vase, which J.B. testified could be heard on the audiotape.

Shortly after breaking the vase, R.B. stated "you want to talk about me breaking my f[******] Lenox, how about I break your f[******] head." J.B. responded, "I would love you to hit me right now" and "touch me, go head, slap me, go head." J.B. also testified after R.B. broke the Lenox vase, R.B. struck him in the face.

When asked to clarify what he meant by his statements and specifically whether he consented to R.B. striking him, J.B. adamantly disagreed and stated "no, I did not want her or wish for her to hit me. Would you wish for someone to hit you? I don't think so. So no, I never wanted to be hit."

A-3940-22

J.B. immediately left his home and drove to the Mt. Arlington Police Department where he reported R.B. "smacked him in the face." He testified he drove to the police station rather than request the police come to the home because he did not want his son or his friends to witness any police interaction. While at the police station, Sergeant Ryan Sherburne, who also testified on behalf of the State at trial, photographed J.B.'s injuries and explained, as reflected in the photographs, J.B.'s ear was "extremely red," and his face swollen.

While at the police station, J.B. received an urgent call from the parties' son. J.B. stated he could hear R.B. banging on their son's door and cursing at him in the background. As a result of the call, J.B., Sergeant Sherburne, and another Mt. Arlington police officer returned to the home where, after speaking with the police, R.B. admitted she "smack[ed]" J.B. in the face but justified her conduct because her husband purportedly "entice[d]" her. Sergeant Sherburne also testified he concluded R.B. was intoxicated based on the smell of alcohol and her difficulty expressing her thoughts.

The second incident occurred approximately four months later, on April 21, 2019. According to J.B., he returned home that night and witnessed R.B. holding a vodka bottle. Based on her behavior, he suspected she was

intoxicated. This was particularly alarming to him considering the prior incident along with the fact R.B. had recently left a rehabilitation facility less than two weeks earlier and was heavily medicated. When J.B. confronted R.B. regarding her conduct, she ran into the bathroom which prompted him to again use his cellphone to record her actions.

In one of the recordings, R.B. lunged toward the camera with J.B. stating "your son just saw you hit me. Don't hit me!" and later stated "Ow, why are you hitting me?" J.B. and his son called 9-1-1 resulting in the arrival of two officers from the Mt. Arlington police department at the home. One of the officers, Patrolman Parichuk[2] testified he reviewed the video and observed the parties' son visibly upset prior to dialing 9-1-1 to report his father being hit by his mother. Patrolman Parichuk then spoke with R.B. who he observed to be intoxicated. R.B. was thereafter again arrested for simple assault. After her arrest, J.B. requested, and was granted, a restraining order.

Before the municipal court, R.B. argued J.B.'s comments effectively invited and "enticed" the assault and constituted consent under N.J.S.A. 2C:2-10. After the presentation of evidence, the municipal court reserved decision. It later issued an oral decision in which it denied R.B.'s applications to dismiss.

---

[2] Patrolman Parichuk's first name is not contained in the record.

A-3940-22

Relying on State v. Galicia, 210 N.J. 364 (2012), the court concluded consent was not a valid defense to the simple assault charges under the facts presented. In doing so, the court clearly credited the testimony of J.B. and the officers and found, on the day of each incident, defendant struck J.B. and did not have consent to do so. The court also found R.B.'s intoxication during both incidents did not qualify as a defense, and thus found R.B. guilty on both charges after concluding she "purposely or knowingly caused bodily injury to another person."

R.B. challenged her convictions and sentence in the Law Division and reprised her consent-based arguments. After conducting an independent review of the record, the court affirmed R.B.'s convictions and sentence and explained its decision in a written statement of reasons. Notably, the court concluded the trial proofs did not support R.B.'s argument that J.B. consented to the assault. On this point, the court relied on Model Jury Charge (Criminal), "Consent (Which Negates an Element of the Offense (N.J.S.A. 2C:2-10))" (approved Oct. 17, 1988), and specifically found after considering all of the trial testimony and proofs, including the audio and video evidence, J.B.'s comments did not constitute a "voluntary and serious agreement" to be struck violently by R.B. and credited J.B.'s testimony that he did not want her to hit him.

A-3940-22

Separately, the court relied on State v. Brown, 143 N.J. Super 571 (Law Div. 1976), aff'd, 154 N.J. Super. 511 (App. Div. 1977), and concluded, even if J.B. consented, it was not a defense to the simple assault under N.J.S.A. 2C:2-10 based on the circumstances of the assaults. As the court explained:

> [T]he purported consent by [J.B.] is not a defense to simple assault "if the defendant's conduct not only causes injury to the person but causes injury to the public as well." Brown, 143 N.J. Super. at 574. Simple assault, while classified as a disorderly persons offense, is an inherently violent offense that, if committed under certain circumstances, can be injurious to the public. While one might construe [J.B.'s] statements as enticing [R.B.] to commit simple assault upon him, his words do not rise to the level of consent particularly when considered under the totality of the circumstances of both incidents. As noted, the [parties'] son was present in the home during both encounters, while their son's friend was present during the December 28, 2018, incident. The proofs show that their son bore witness to his mother, [R.B.], drunkenly assaulting his father. . . . This [c]ourt cannot find that [R.B.] had a valid consent defense to simple assault, notwithstanding [J.B.'s] words, given the alarming circumstances with their child's presence and involvement in the case.

R.B. thereafter moved for reconsideration. After considering the parties' arguments, the court denied R.B.'s application in an oral decision. While the court again acknowledged, taken out of context, J.B.'s statements could give rise to a claim of consent, the court found a "reasonable person in defendant's position would have understood that the statements made by [J.B.] in the heat

7

of the argument . . . did not constitute a voluntary and serious agreement to be struck in the face."  As to R.B.'s argument the court improperly relied on Brown, the court stated it referenced the case "only to provide a basis to address the totality of the circumstances" of R.B.'s conduct.  The court further explained, if its reference to Brown "was removed entirely from the initial statements of reasons . . . the [c]ourt's finding concerning whether [J.B.]'s statements constituted consent would not change."

The court granted a stay and this appeal followed in which R.B. raises the following single point for our consideration:

> THE COURT BELOW DID NOT UNDERSTAND N.J.S.A. 2C:2-10(B); IF IT DID, IT WOULD NEVER HAVE CITED STATE v. BROWN.

As R.B. detailed in her merits brief, she contends the municipal court and Law Division erred as a matter of law in concluding consent was inapplicable to the assault at issue.  On this point, she argues the municipal court incorrectly relied on Galicia, as that was a murder case with a passion-provocation defense, not, as here, a simple assault involving bodily injury of a non-serious nature. R.B. further argues the Law Division compounded that legal error by relying on Brown, which she claims is similarly legally and factually inapposite, as Brown involved an "atrocious assault and battery."

8

R.B. maintains N.J.S.A. 2C:2-10(b) specifically permits the defense of consent "if . . . the bodily harm consented to or threatened by the conduct consented to is not serious . . . ," which she asserts clearly applies to the redness and swelling detailed in the photographs of J.B.'s face and ear. R.B. further contends the proofs presented at trial supported the defense as Sergeant Sherburne agreed that J.B. "enticed" R.B. R.B. also argues the court ignored J.B. had a motive to remove R.B. from the home as divorce proceedings were pending and one of the recordings was "modified, . . . to remove the actual confrontation" between the parties.

We are satisfied the court's determinations that R.B. assaulted J.B. and did not consent to do so are amply supported by the record and we therefore affirm her convictions and sentence.

## II.

We begin our review with well-settled principles. On appeal from a municipal court to the Law Division, the review is de novo on the record. R. 3:23-8(a)(2). The Law Division judge must make independent findings of fact and conclusions of law but defers to the municipal court's credibility findings. State v. Robertson, 228 N.J. 138, 147 (2017). Moreover, a court need not explicitly state it has found a witness credible, if its other fact-findings make the

credibility finding implicit. In re Taylor, 158 N.J. 644, 659 (1999) ("[C]redibility findings need not be explicitly enunciated if the record as a whole makes the findings clear").

We also defer to the municipal court's credibility findings. State v. Kuropchak, 221 N.J. 368, 382 (2015). Unlike the Law Division, however, we do not independently assess the evidence. State v. Locurto, 157 N.J. 463, 471 (1999). The rule of deference is more compelling where, as here, the municipal and Law Division judges made concurrent findings. Id. at 474. "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Ibid.

We review orders denying reconsideration motions under an abuse-of-discretion standard. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). We review questions of law de novo. Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

Pursuant to N.J.S.A. 2C:12-1(a)(1), a person is guilty of simple assault if he "attempts to cause or purposely, knowingly or recklessly causes bodily injury to another." N.J.S.A. 2C:11-1(a) defines "bodily injury" as "physical pain,

illness or any impairment of physical condition."  "The consent of the victim to conduct charged to constitute an offense or to the result thereof is a defense if such consent negatives an element of the offense or precludes the infliction of the harm or evil sought to be prevented by the law defining the offense." N.J.S.A. 2C:2-10(a).

Consent to bodily harm, however, only constitutes a defense when the conduct consented to is not serious, the conduct and the reasonably foreseeable harm of joint participation in the activity is not of a kind forbidden by law, or "the consent establishes a justification for the conduct under chapter 3 of the code."  N.J.S.A. 2C:2-10(b).  Further, for an individual to provide effective consent, it must be freely and voluntarily given.  Model Jury Charge (Criminal), "Consent (Which Negates an Element of the Offense (N.J.S.A. 2C:2-10)).

In Brown, the court addressed the application of consent to an "alleged atrocious assault and battery . . . ."  Brown, 143 N.J. Super. at 572.  The Law Division conducted a lengthy historical analysis and noted courts consistently held the consent defense did not apply to criminal assaults.  Id. at 573 (citation omitted).  The Law Division concluded, as a matter of law, "no one has the right to beat another even though that person may ask for it" as the court explained, "assault and battery cannot be consented to by a victim, for the State makes it

unlawful and is not a party to any such agreement between the victim and perpetrator." Id. at 579. The court further reasoned the State has an "interest in protecting those persons who invite, consent to and permit others to assault and batter them. Not to enforce these laws which are geared to protect such people would seriously threaten the dignity, peace, health and security of our society." Id. at 580.[3]

We affirmed and stated a "victim cannot consent to the infliction of an atrocious assault and battery on his person and thus effectively bar the prosecution of his attacker." State v. Brown, 154 N.J. Super. 511, 512 (App. Div. 1977). We found, however, "no necessity, under the present circumstances, to decide whether consent of the victim might constitute a complete defense to [simple assault and battery either in the civil or disorderly persons sense.]" Ibid.

We are unpersuaded by R.B.'s argument that her convictions and sentence should be vacated because the Law Division erroneously relied on Galicia and Brown when considering and rejecting her consent-based defense. First, we

---

[3] In Galicia, our Supreme Court held "N.J.S.A. 2C:11-4(b)(2) makes clear that only murder can be mitigated by passion/provocation" therefore rejecting "defendant's contention that the applicability of passion/provocation to murder but not manslaughter creates a logical absurdity, reflects a legislative oversight, or compels us to construe N.J.S.A. 2C:11-4(b)(2) contrary to its express terms." Ibid.

review challenges to orders, not opinions. Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001) ("[I]t is well-settled that appeals are taken from orders and judgments and not from opinions . . . or reasons given for the ultimate conclusion") (citing Heffner v. Jacobson, 100 N.J. 550, 553 (1985)). Second, as noted, the Law Division considered N.J.S.A. 2C:2-10 and concluded it was inapplicable because J.B.'s comments did not reflect his free and voluntarily consent to the injuries R.B. indisputably inflicted. Thus, we deem it unnecessary to resolve the courts' alternative argument under N.J.S.A. 2C:2-10(b)(1), as to whether J.B.'s injuries, notably his reddened and swollen face inflicted in the presence of the parties' son, constitute "serious" injuries.

In sum, the determination of R.B.'s guilt turned upon the testimony of the witnesses as corroborated by the audio and video recordings and photographs of J.B.'s injuries. The Law Division judge made his own determination that R.B., threatened, and subsequently struck J.B. during both the December 28, 2018, and April 21, 2019, incidents. Further, the Law Division judge found J.B. did not consent to, or entice, R.B.'s conduct, but rather made statements in the context of a heated argument, informing R.B. that violence would result in police intervention. We are convinced those factual findings supported a de novo finding that R.B. was guilty of simple assault beyond a reasonable doubt.

13

In light of our decision, we also conclude the court did not abuse its discretion in denying reconsideration. Branch, 244 at 582. To the extent we have not specifically addressed any of R.B.'s remaining arguments, it is because they lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

The stay imposed by the Law Division' order is lifted, except that the stay shall continue for twenty-four hours to allow the parties to seek emergent relief from the Supreme Court. Should any party file an emergent application with the Supreme Court, the stay shall continue until the Supreme Court disposes of that application, or until further order of the Court.[4]

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] We take this prophylactic measure notwithstanding the fact R.B. never moved before us to continue the stay entered by the Law Division.

A-3940-22